## Case No. 14,488.

### UNITED STATES v. BABCOCK.

[4 McLean, 113.] [1]

Circuit Court, D. Michigan. June Term, 1846.

PERJURY—EXTRA-JUDICIAL OATHS—USAGE—MINISTERIAL OFFICER—INDICTMENT—FALSITY—MOTIVE.

1. Where a clerk of a circuit court administers an oath as to the travel of a witness, which is not required by law, nor by a rule of court, it is not false swearing, under the act of congress.
[Cited in Com. v. Kimball, 108 Mass. 476.]

2. The oath must be required by law, or by usage, sanctioned by the court, or the department of the government, to make it perjury.
[Cited in U. S. v. Howard, 37 Fed. 667.]

3. The act of congress applies to oaths made in behalf of claims against one of the departments of the government.

4. A ministerial officer can not institute a usage, which shall bring a case within the law.
[Cited in U. S. v. Evans, 2 Fed. 152.]

---

[1] [Reported by Hon. John McLean, Circuit Justice.]

5. A voluntary or extra-judicial oath is not perjury.

6. The indictment should charge that the oath was false, and known to be so by the witness.
[Cited in Downey v. Dillon, 52 Ind. 449.]

7. Also, the motive must be stated in the indictment to be corrupt, or words equivalent.
[Cited in Downey v. Dillon, 52 Ind. 449.]

At law.

Mr. Norvell, U. S. Dist. Atty.
Mr. Bates, for defendant.

OPINION OF THE COURT. This is an indictment for perjury. The defendant is charged with having been duly summoned as a witness in the case of the United States v. John Allen [unreported], then pending in this court. That by his attendance he became entitled to five cents mileage in coming to and returning from the place of holding court. And the indictment charges, that in order to substantiate his claim against the United States for said mileage, and to procure payment therefor, he appeared before John Winder, clerk of this court, and then and there made his corporal oath, and answered to the question put to him by said clerk, that the distance from his place of abode to this court, was one hundred and seventy miles, whereas it was a much less distance, being ninety-two miles, etc. The indictment also charges that the defendant deceitfully and fraudulently, intending to defraud the United States by claiming and obtaining a larger amount of money than he was entitled to as a witness in the said cause, he did of his own wicked and corrupt mind, falsely swear as aforesaid in support of his said claim against the United States, etc. Other counts varied somewhat the charge, but not altering the allegations, substantially, as above stated. There was a general demurrer filed to the indictment, on the ground that the indictment charges no offense against the laws of the United States. In the 13th section of the act of congress of the 3d of March, 1825 [4 Stat. 118], it is declared, "If any person, in any case, matter, hearing, or other proceeding, when on oath or affirmation, shall be required to be taken or administered under or by any law or laws of the United States, shall, upon the taking of such oath or affirmation, knowingly and willfully swear or affirm falsely, every person so offending shall be deemed guilty of perjury, and shall, upon conviction thereof, be punished by fine, not exceeding two thousand dollars, and by imprisonment and confinement to hard labor, not exceeding five years." The oath in this case, as charged in the indictment, was not taken under any law of the United States: and this is necessary to bring the charge within the above act. The courts of the United States have no criminal jurisdiction, except that which is given to them by the laws of the United States. They can not punish common law offenses. In a criminal case, the defendant is entitled to a strict construction of

the law under which he is arraigned, and he can not be punished unless he is clearly within the law. But it is insisted that the offense comes under the 3d section of the act of the 1st of March, 1823. It reads, "If any person shall swear or affirm falsely touching the expenditure of public money, or in support of any claim against the United States, he or she shall, upon conviction thereof, suffer as for willful and corrupt perjury." The objection to this law is, that it refers, exclusively, to claims made against the United States, through one of the departments of the government. The first part of the section refers to the disbursements or expenditures of public money; the second, where an individual swears in support of any claim against the United States. There can be little doubt that this section was intended to apply to the authentication of claims made to one of the departments. It is connected with the expenditures of public money, and was designed to protect the treasury from false oaths, in regard to such expenditures. But is the provision limited to such applications? May it not be held to embrace the present case? The oath was not required to be administered by any law of the United States, nor any rule of the court. It was a usage introduced by the clerk, in ascertaining the mileage that witnesses were entitled to claim. There can be no doubt that the clerk, in the presence of the court, or any other person acting under the sanction of the court, is authorized to administer oaths. It is the act of the court, in such a case, and not an act done by the authority of the individual who administered the oath. But where the clerk, out of court, in the ordinary performance of his duties, thinks proper to administer oaths, for his own convenience or security, which are not required by the law or an order of court, it is exceedingly doubtful whether such a swearing is within the above section.

The claim, in one sense, is against the United States, as the United States were a party to the suit, and the indictment avers that the claim was against them. But the oath was, substantially, only before the clerk, no record being made of it. The fact sworn to, conduced to fix the amount of compensation for traveling, as it established the distance, on which mileage was allowed. Had the law required this oath to be taken, or had it been required by an order of court, we should have had great difficulty in saying it was not perjury or false swearing, within one of the above sections. If the taking of the oath may be called a usage, it is the usage of the clerk, and not of the court. And it seems to be more than doubtful, whether an officer of the court, without any higher authority, should institute a usage which, to individuals, might be attended with consequences so serious. An extra-judicial oath lays no foundation for a prosecution of perjury. Indeed, the policy of multiplying oaths, is questioned by persons of the most enlarged experience. Make anything common, of this nature, and the solemnity which it would otherwise impart, is, measurably, lost. Custom house oaths, in all countries, have become a proverb and a reproach, and tend but little to secure the public against frauds. The clerk, by a rule of court, may be authorized to administer oaths. But in what cases? Surely not in all cases where he may deem expedient. In performing that duty, he must act under the authority of law, or under the orders of the court. He is a mere ministerial officer, and must, consequently, act under authority. The indictment seems to be defective in not averring that the oath was willfully, knowingly, and corruptly taken, knowing it to be false, or words of the same import. If the affiant swore falsely, through ignorance as to the distance in this case, he was not guilty. We do not say, that under either of the sections cited, the indictment must charge the offense with all the technical accuracy as in an indictment for perjury. But the averments must show that the defendant knew that he swore falsely, and that his motive was corrupt.

Upon the whole, the demurrer is sustained, and the defendant is discharged from custody.