James Sanders

*v.*

The People of the State of Illinois.

*Filed at Mt. Vernon March 27, 1888.*

1. Perjury—*materiality of a statement upon which to assign perjury.* A party indicted for burglary and larceny filed his affidavit in support of his motion for a continuance, in which he stated that he could prove an *alibi* by a witness named, and that he was the only witness by whom he could prove that he, the affiant, was at his home on, etc.: *Held,* that the statement there was no other witness by whom the *alibi* could be shown, was a pertinent and material point on the motion, and if false, perjury could be assigned upon it, although the affidavit may have been insufficient in that it failed to show proper diligence to procure the attendance of the witness.

2. Indictment for perjury—*sufficiency—as showing materiality of matter sworn to.* An indictment for perjury averred that a certain cause was pending in the court, naming the parties and court; that the defendant therein had made a motion for a continuance, and that upon the hearing of that motion the affidavit of the defendant, used by him, was material, and that it was a material question upon such hearing whether or not one W. was the only witness by whom an *alibi* of the defendant could be proved, and setting out the language of the affidavit in this respect, and charging its falsity in the usual manner, is sufficient to sustain a conviction.

3. Jury in criminal case—*to be in charge of sworn officer.* On the adjournment of court at noon, the officer who took charge of the jury in a criminal case the trial of which was pending, was sworn by the clerk, as required by section 15, division 13, chapter 38, of the Revised Statutes. After the court met in the afternoon, and some further proceedings were had, the jury retired "to consider of their verdict," but the officer attending

them, being the same officer in whose charge the jury were placed at the noon adjournment, was not again sworn: *Held*, that while it would have been better if the officer had been sworn at the time the jury retired, yet if the proper oath was administered to the officer a few hours before, the irregularity was not of such gravity as to call for a reversal.

4. The swearing of an officer to take charge of a jury a few hours before the jury retire to consider of their verdict, will not justify a reversal of a judgment of conviction, when it is not shown that the jury were not attended to a private and convenient place, or were not kept together without meat or drink until they agreed, or that others were suffered to speak with them, or that they were exposed in any such way as to be operated upon to the prejudice of the prisoner.

5. PRACTICE—*matters in argument to jury, outside the record—how far allowable—in criminal case.* A State's attorney, in addressing the jury in a criminal case, has the right to dwell upon the evil results of crime, and to urge a fearless administration of the criminal law. He may comment upon the conduct of the accused, and illustrations drawn from well known historical facts are not out of place, when used merely for the purpose of explaining or emphasizing the bearings of the evidence.

6. On the trial of a party for perjury, assigned upon statements in an affidavit for a continuance, in addressing the jury the State's attorney told them that criminals often escaped their just deserts, and the wheels of justice were often blocked by such false affidavits for delay as the prisoner was charged with making, and that it was their duty to put a stop to that kind of work. He also referred to the destruction of the court house in Cincinnati a few years ago, as illustrating the effect of public indignation, when aroused by the unjust escape of criminals through perjured evidence: *Held,* that the language of the State's attorney was not of such a character as to justify the reversal of a judgment of conviction.

7. On the same trial for perjury, in making an affidavit for a continuance in another case, against the defendant and two others, for burglary, the defendant asked the court to instruct the jury to disregard any remarks by the State's attorney concerning any other case than the one on trial: *Held,* that the instruction was properly refused, as the burglary case, though not being tried, was so closely connected with the case on trial as to make it impossible to avoid making remarks about it.

8. SAME—*time to object—as to improper remarks of counsel to jury.* If it be claimed that counsel pursued an improper line of argument to the jury in a criminal case, the objection, to be availing, should be made at the time. It comes too late on appeal or error.

9. INSTRUCTIONS—*directing attention to part of the facts only.* An instruction which purports to summarize the principal facts in a case, but directs the attention of the jury only to those favorable to one of the parties, is bad, and properly refused.

10. SAME—*as to proof of facts.* An instruction which tells the jury that if they find certain facts from the evidence, those facts are proved, is meaningless, and calculated to mislead and confuse the jury. Facts are proven by the evidence, and not as the result or consequence of a finding by the jury.

11. SAME—*must be based on evidence.* Instructions are erroneous when there is no evidence on which to base them. So, instructions directing the jury to consider the character and reputation of the witnesses for the State, on a criminal prosecution, and the reputation of the prisoner for truth and veracity, when there is no evidence on these subjects, are bad.

12. SAME—*as to presumption of innocence.* An instruction that "the defendant, though indicted for perjury, is just as innocent of the crime as though not indicted," is erroneous, as virtually telling the jury that the defendant is innocent, independently of what the evidence may show.

WRIT OF ERROR to the Circuit Court of St. Clair county; the Hon. B. H. CANBY, Judge of the City Court of East St. Louis, (by request of Hon. W. H. SNYDER, circuit Judge,) presiding.

Mr. WILLIAM P. LAUNTZ, for the plaintiff in error:

It is the false swearing to a matter material to the point of inquiry that constitutes perjury. *Pollard* v. *People,* 69 Ill. 148; *Morrell* v. *People,* 32 id. 502.

The affidavit being insufficient to procure a continuance, presented a wholly immaterial issue, as it was not used, and its making injured no one.

The court erred in allowing the State's attorney to make improper remarks to the jury. *Kennedy* v. *People,* 40 Ill. 489; *Fox* v. *People,* 95 id. 78.

It was error not to place the jury in charge of a sworn officer, as the law requires. Crim. Code, sec. 495; Rev. Stat. chap. 38, div. 13, sec. 15; *McIntyre* v. *People,* 38 Ill. 514; *Lewis* v. *People,* 44 id. 452; 2 Blackf. 478.

Mr. GEORGE HUNT, Attorney General, and Mr. R. D. W. HOLDER, State's Attorney, for the People:

The indictment contained every necessary allegation, and is sufficient. Rev. Stat. chap. 38, sec. 227; *Morrell* v. *People,* 32 Ill. 502; *Henderson* v. *People,* 117 id. 265.

Our remarks to the jury were justified by the circumstances. They were in reply to the able and ingenious argument of counsel for plaintiff in error, that inasmuch as the affidavit failed of its purpose, and that Sanders had been acquitted on the trial of the case, the jury ought to acquit him of the charge of perjury. *Bulliner* v. *People,* 95 Ill. 394; *Duffin* v. *People,* 107 id. 113; *Epps* v. *State,* 102 Ind. 539; *Cross* v. *State,* 63 Ala. 40.

There was no error in refusing the instructions asked by the plaintiff in error. The court is not bound to give instructions as asked, when the substance of them has already been given, or when they are not based on evidence. *Crews* v. *People,* 120 Ill. 318; *Spies* v. *People,* 122 id. 1; *Pennsylvania Co.* v. *Marshall,* 119 id. 399; *Railroad Co.* v. *Bragonier,* id. 51; *Thompson* v. *Duff,* id. 226.

The irregularity in swearing the officer to take charge of the jury not having prejudiced the prisoner in any manner, will not be ground for reversal. *McIntyre* v. *People,* 38 Ill. 514; *Adams* v. *People,* 47 id. 376; *McKinney* v. *People,* 2 Gilm. 556; *Perteet* v. *People,* 70 Ill. 171; *Bulliner* v. *People,* 95 id. 394; *Mackin* v. *People,* 115 id. 312; *Graham* v. *People,* id. 566; *Hughes* v. *People,* 116 id. 330.

Mr. JUSTICE MAGRUDER delivered the opinion of the Court:

Plaintiff in error was indicted jointly with Christian A. Schmidt and Peter Tourville for breaking into a house a few miles from East St. Louis on the night of October 22, 1886, and taking therefrom certain articles of property. He was tried on March 29, 1887, for the burglary and larceny, for which he had been so indicted, and was acquitted.

In the case at bar, plaintiff in error was indicted for perjury. The complaint is, that on March 29, 1887, before his trial for burglary and larceny began, he made an affidavit for continuance, on the ground that he could not safely proceed to trial

in the absence of H. T. Winchester, a witness by whom he expected to prove an alibi. In the affidavit he made the following statement: "That Winchester will swear that this affiant was at his home in East St. Louis, St. Clair county, Illinois, in the first ward, between Main and Second streets, in said city, on the night of the 22d day of October, 1886, from 8 o'clock P. M. until 11:30 o'clock P. M.; that said Winchester is the only witness by whom he can prove that he was at his home there, as aforesaid, until that time."

The indictment for perjury in making this affidavit charges that "in truth and in fact the said H. T. Winchester was *not* the only witness who could swear to the facts, and by whom the said James Sanders could then and there prove that he, the said James Sanders, was at his home in the first ward of the city of East St. Louis, in the county of St. Clair, aforesaid, on the night of the 22d day of October, A. D. 1886, from 8 o'clock P. M. to half past 11 o'clock P. M., as the said James Sanders then and there well knew at the time the said James Sanders made his oath and affidavit, as aforesaid."

The continuance was refused on the ground that due diligence had not been used to procure the attendance of the absent witness. The trial for burglary and larceny then proceeded. Upon the trial, which took place on the same day on which the affidavit was made, Sanders introduced Annie Lane and Lehndorf Tate as witnesses to prove the alibi.

Mrs. Lane swore that she was at the home of Sanders on the night in question until 11 o'clock and that Sanders was there up to that time. Tate swore that he was at the home of Sanders during the whole of the night of October 22, 1886, and that Sanders was at home during the entire night. It was also proven, that Sanders, who had been out on bail from March 16, 1887, to March 29, 1887, came, on the latter day shortly before making the affidavit for continuance, on the cars from East St. Louis to Belleville in company with Tate,

and was then and there engaged in conversation with Tate in reference to what the latter would testify to about the alibi.

The jury found plaintiff in error guilty of perjury. Judgment has been entered upon the verdict and plaintiff in error has been sentenced to the penitentiary. The judgment is brought before us for review by writ of error.

The first error assigned is the refusal of the court below to quash the indictment. The indictment is claimed to have been insufficient on the alleged ground that the false swearing was not in respect to a matter *material* to the point of inquiry, and, therefore, could not constitute the crime of perjury under the rulings of this court. _Pollard_ v. _The People_, 69 Ill. 148; _Henderson_ v. _The People_, 117 id. 265.

The issue presented by the affidavit for continuance was not whether the defendant was guilty or innocent of the charge of burglary and larceny. The affidavit alleged that there was no other person, by whom an alibi could be proved, except Winchester. The issue presented was the truth or falsity of this allegation. It was pertinent and material to the motion for continuance, which had been made by Sanders and was then pending in the pending cause of The People v. Sanders, Schmidt and Tourville. It makes no difference that the continuance was denied, or that the affidavit did not show the exercise of due diligence. If the affidavit was false as to a material fact necessary to support the general ground, upon which a continuance was asked, then perjury was committed.

The indictment in this case is not obnoxious to the objections mentioned in the case of _Morrell_ v. _The People_, 32 Ill. 502, referred to by counsel. There, it did not appear from the indictment that an application for a continuance was made and that the affidavit was material on such application. Here, the indictment avers that a cause was pending in the court, that a motion for continuance had been made, and that, upon the hearing of that motion, the affidavit was material. It was a material question upon such hearing whether or not Win-

chester was the only witness by whom the alibi could be proved. We do not think that the trial court erred in refusing to quash the indictment.

It is next assigned for error, that the jury were not placed in charge of a sworn officer, when they retired "to consider of their verdict," in accordance with the requirement of section 495 of the Criminal Code. That section provides that "when the jury retire to consider of their verdict in any criminal case, a constable or other officer shall be sworn or affirmed to attend the jury," etc.

The evidence shows, that, when court adjourned at noon, the officer, who took charge of the jury, was sworn by the clerk in the manner required by said section, but, after the noon recess, the jury returned into court, some further proceedings were had in the trial, the jury *then* retired "to consider of their verdict," but the officer, who attended them, was not again sworn. It would have been better, if the officer had been sworn to attend the jury and keep them together and prevent others from speaking to them, etc., *at the time* they retired to their consultation room to agree upon their verdict. But if the statutory oath was administered to the same officer an hour or more *before* they retired to the jury room, we do not regard this as such an irregularity as will justify a reversal.

In *Lewis* v. *The People*, 44 Ill. 452, it appeared that the officer, in whose charge the jury were placed while deliberating upon their verdict, either was not sworn at all, or was not sworn in the mode required by the statute. So, also, in *McIntyre* v. *The People*, 38 Ill. 514, it appeared that "the oath required by the statute was not administered." In the case at bar, however, such an oath as the statute provides for *was* administered by the clerk to the officer in charge. The only peculiarity about it was that it was administered an hour or more *before* the jury retired, instead of being taken *at the time* or "*when*" they retired. In *McIntyre* v. *The People*, *supra*, the

officer was sworn "on an adjournment of the court at a pre-vious time in the progress of the trial," just as in the present case. But, there, the objection was only as to the character of the oath, and not as to the time when it was taken.

We do not think that the plaintiff in error was prejudiced by administering the oath at the noon recess instead of doing so later in the afternoon. It is not shown that the jury were not attended to a private and convenient place, or were not kept together without meat or drink until they agreed upon their verdict, or that others were suffered to speak to them, or that they were exposed in any such way as to be operated upon to the prejudice of the prisoner. The irregularity, here indicated, is too slight to be regarded as a just ground for reversal. *Adams* v. *The People,* 47 Ill. 376.

Certain statements, alleged to have been made by the State's attorney in his closing argument to the jury and which are set forth in an affidavit made upon the motion for a new trial, are claimed to have had an improper influence upon the jury. We do not think the language of the State's attorney was of such a character as to justify us in reversing this judgment. He told the jury, that criminals often escaped their just deserts and the wheels of justice were often blocked by such false affi-davits for delay, as the prisoner was charged with making, and that it was their "duty to put a stop to that kind of work." He referred to the destruction of the court house in Cincinnati a few years ago, as illustrating the effect of public indignation, when aroused by the unjust escape of criminals through per-jured evidence.

Counsel must be allowed to pursue a legitimate line of argu-ment in addressing juries. They have a right to dwell upon the evil results of crime and to urge a fearless administration of the criminal law. They may comment upon the conduct of the accused. Illustrations drawn from well-known historical facts are not out of place, when used merely for the purpose of explaining or emphasizing the bearings of the evidence. In

15—124 ILL.

*Bulliner* v. *The People,* 95 Ill. 394, we said that it was impossible to lay down any fixed rule with respect to the illustrations, with which counsel should be allowed to embellish their arguments, and that "the trial judge should always see that the line of argument is kept within reasonable bounds, and not allow the defendant to be convicted or prejudiced on account of real or imaginary crimes for which he is not upon trial. And unless for a palpable abuse of discretion in this regard, manifestly tending to an improper conviction, there should be no reversal." We see no abuse of discretion here in this respect. Moreover, it does not appear that any exception was taken to the language of the State's attorney at the time it was used. Counsel should not remain quiet until the verdict is brought in and then complain of remarks alleged to have been improper. Upon objection made at the time of their utterance, the court can caution the jury against them and prevent any injurious effects.

Plaintiff in error also complains of the refusal of the trial court to give eight instructions asked by him and numbered from 7 to 14 inclusive. There was no error in the action of the circuit court in this regard.

Instruction No. 7 is faulty in that it calls the attention of the jury to a part only of the evidence tending to prove the fact in issue. It gives prominence to the facts, that Mrs. Lane was at Sanders' house until 11 o'clock and left there at that time, and that Winchester was there when she left, but it omits to state the fact sworn to by Tate that Winchester was at the house all night. An instruction, which purports to summarize the principal facts but directs the attention of the jury only to those favorable to one of the parties, is bad. (*Evans* v. *George,* 80 Ill. 51.) Moreover, the instruction tells the jury that if they find certain facts from the evidence, those facts are proved. This is meaningless. A jury can only find facts to exist, because they are proven to exist. Facts are not proven as the result or consequence of a finding by the jury.

The result, which must follow from the finding of a jury in a criminal case, is the guilt or innocence of the prisoner. To say to a jury: "If you find certain facts from the evidence, the prisoner is guilty," or, "If you find certain facts from the evidence, the prisoner is not guilty," is intelligible. But to say to a jury: "If you find certain facts from the evidence, those facts are proved," is calculated to confuse.

Instructions 8 and 9 are erroneous as not being based on the evidence. (*Stern* v. *The People*, 102 Ill. 540.) They direct the jury to consider the character and reputation of the witnesses for the State and the reputation of the prisoner for truth and veracity. Upon these subjects no proof was introduced.

Instruction No. 10 is substantially the same as the first instruction given for the defendant. In addition to this, it purports to summarize all the facts and yet omits all reference to the important circumstance of the defendant's conversation with Tate on the cars on the morning of the trial, as showing defendant's knowledge of what Tate would swear to.

The first part of instruction No. 11 is a quotation from the statute as to what is required in an affidavit for continuance. It tended to produce the impression upon the minds of the jury, that if such affidavit did not show the exercise of diligence in procuring the attendance of a witness, its falsity in other respects would be immaterial. Such is not the law, as we have above stated. The second part of the eleventh instruction is a mere repetition of instructions that were given.

The twelfth instruction told the jury, that "the defendant, though indicted for perjury is just as innocent of the crime as though not indicted." It may have been the intention of this instruction to say to the jury, that the fact of the defendant's indictment would make no difference in determining the question of his guilt or innocence. But the instruction virtually said, that the defendant was innocent independently of what the evidence might show on that subject, and, of course, it was erroneous.

The thirteenth instruction, which told the jury, that, if the defendant made the affidavit in good faith for the purpose of having the cause continued until the evidence of Winchester could be procured, the verdict should be not guilty, was substantially embodied in several of the instructions that were given.

The fourteenth instruction was as follows: "You are instructed that any remarks made by the State's attorney concerning any other case than this one were improper and should be disregarded by you." This instruction was properly refused. The charge was perjury in swearing to an affidavit in the case of The People v. Sanders, Schmidt and Tourville. The latter case was not the case on trial, but it was impossible to avoid making remarks about it from the very nature of the charge.

It is furthermore claimed that the evidence did not warrant the verdict. It was the peculiar province of the jury to weigh and consider the evidence. Their finding is not so contrary to the testimony in the case as to impress us with the belief that the verdict was the result of passion or prejudice. Therefore we can not disturb it. *Graham* v. *The People*, 115 Ill. 566.

Defendant swore, that there was no other witness except Winchester, by whom he could prove, that he was in his own home when the burglary was committed. An hour or more after he swore to this, he produced two witnesses, Lane and Tate, who swore to his being at home at the time named. Shortly before making the affidavit he was in consultation with these very witnesses on the cars and in the court room about the testimony they were to give.

The judgment of the circuit court is affirmed.

*Judgment affirmed.*