(No. 32526.— ▮▮▮▮▮)

Mary Kukulka Loraitis, Appellee, *vs.* John Kukulka *et al.*—(John Kukulka, Appellant.)

*Opinion filed December 7, 1953—Rehearing denied Jan. 18, 1954.*

HERBERT M. WETZEL, of Chicago, (ARTHUR FRANKEL, DEMETRI M. SPIRO, and STEPHEN N. SIRA, of counsel,) for appellant.

EUGENE P. MEEGAN, of Chicago, (WILLIAM N. BRADY, of counsel,) for appellee.

Mr. JUSTICE MAXWELL delivered the opinion of the court:

This is an appeal from an order of the superior court of Cook County, finding the appellant, John Kukulka, in contempt of said court. The jurisdiction of this court has been invoked by virtue of certain constitutional grounds asserted by the said appellant, hereinafter referred to as defendant. Defendant's claim of a freehold being involved is incorrect.

Mary Kukulka Loraitis instituted her suit in the trial court against the defendant, his wife, and the defendant's brother and his wife, for the purpose of setting aside a certain conveyance alleged by the plaintiff to be without consideration and in fraud of creditors. In the amended complaint, filed October 24, 1951, plaintiff alleged she made a loan to defendant in the amount of $2700, and that defendant executed a note for said amount as evidence of said indebtedness; that subsequent to demands and attempts to collect said indebtedness she filed suit May 24, 1950, and obtained judgment against defendant for $2700, plus costs. An execution issued on said judgment was returned by the sheriff of Cook County with the endorsement "No property found, no part satisfied." Plaintiff further alleged

that at the time of making the note defendant was the owner of a certain piece of improved property located at 4633 South Hermitage Avenue in the city of Chicago; and that the improvements consisted of a frame building containing six 4-room apartments. The defendant resided in one of said apartments at the time the fraudulent conveyance suit was instituted. Among other things, plaintiff also alleged that on October 4, 1949, the defendant and his wife conveyed the said premises to his brother and sister-in-law, as joint tenants; that said deed was recorded in the office of the recorder of deeds of Cook County, and that said brother and sister-in-law in return executed a mortgage in the sum of $1000 to the defendant, said mortgage also being recorded in said recorder's office. Plaintiff alleged defendants were seeking to sell the said premises for the sum of $9500, and that the conveyance of October 4, 1949, was fraudulent and an effort to prevent the collection of her judgment. The verified answer of the several defendants, including John Kukulka, denied the material allegations of the amended complaint. Thereafter, plaintiff filed a petition for the taking of depositions of the defendants. A motion to strike and dismiss this petition was filed by these defendants, setting up, among other things, that the petition for depositions and discovery was in violation of the fourth, fifth and fourteenth amendments of the Federal constitution, and section 2 of article II, and section 6 of article II of the State constitution. These same grounds were re-asserted in an application for a writ of injunction filed by the defendants seeking to enjoin the taking of said depositions. The motion to strike and dismiss and the application for injunction were denied and defendants were ordered by the court to answer the certified questions propounded. The defendants appeared on April 22, 1952, pursuant to *subpoenas* issued, at the office of the designated notary public and refused to answer almost all of the questions propounded which pertained to the real-estate conveyance

in question. The questions were certified to the court and, upon motion of plaintiff for a rule on defendants to show cause why they should not be punished for failure to comply with the orders of the trial court to answer the interrogatories, a rule accordingly was entered by the court on April 25, 1952.

In the reply and supplementary reply filed by defendants answering the petition for rule to show cause, defendants set forth the same constitutional grounds. Each of the defendants asked to be relieved from the rule by virtue of their sworn replies under oath, and claimed thereby that this purged them of contempt of court. The defendants, in addition, filed objections to the jurisdiction of the subject matter and the parties under the said rule to show cause. Thereafter, the defendants also filed a motion to strike and dismiss the rule on the questions certified to the court, setting forth in substance the same grounds alleged in their previous pleading. On June 30, 1952, the trial court overruled and denied the defendants' reply to the petition for the rule to show cause and ordered them to file their answer to the questions to be certified to the court. On July 7, 1952, upon defendants' refusal to answer the questions as certified, the court found the defendant John Kukulka in contempt of court and thereby adjudged him guilty of such contempt and committed him to the county jail until such time as he answered the certified questions; said confinement was not to exceed a period of six months. The hearing was continued as to the other three defendants, and a motion to vacate this judgment order filed by the defendant in substance set up the same grounds urged in previous pleadings.

An examination of the record and of the assignments of error in defendant's brief leaves us in doubt as to the precise grounds relied upon in the trial court and here to justify the defendant's refusal to answer the questions. All of the questions related to the conveyance, and they were

of such a nature that answers to them would have determined whether or not there had in fact been a fraudulent conveyance. The answers to them would also have either confirmed the allegations in defendant's sworn answer or would have been inconsistent with them.

It appears that at one point in the proceedings the defendants based their refusal to reply on the fear of possible incrimination under the statute which makes a fraudulent conveyance a criminal offense. (Ill. Rev. Stat. 1951, chap. 38, par. 319.) Since that offense is only a misdemeanor, (Ill. Rev. Stat. 1951, chap. 38, pars. 585, 586,) the period of limitations is only one year and six months. (Ill. Rev. Stat. 1951, chap. 38, par. 631.) The conveyance here having been made over two years before the present proceedings commenced, no valid claim of incrimination under that statute could be asserted unless a different result is required by the provision of the statute which makes it an offense to defend a conveyance in fact fraudulent as having been made in good faith. (*Weldon* v. *Burch,* 12 Ill. 374.) We need not decide this question, because we think the defendants abandoned any such claim and rested upon the different theory that their answers would contradict the allegations of their pleading and so expose them to prosecution for perjury. This is made clear by the repeated statements of the trial judge that he would not find them in contempt if they explicitly asserted a claim based on the fraudulent conveyance statute, and by the defendants' failure to assert such a claim. As a result the trial judge correctly assumed that only the claim of incrimination based upon a possible perjury conviction remained in the case.

The statute defining the offense of perjury (Ill. Rev. Stat. 1951, chap. 38, par. 473,) provides: "Every person, having taken a lawful oath or made affirmation, in any judicial proceeding, or in any other matter where by law an oath or affirmation is required, who shall swear or affirm willfully, corruptly and falsely, in a matter material to the

issue or point in question * * * shall be deemed guilty of perjury * * *." The explicit language of the statute leaves no doubt as to its broad scope. The law attaches superior effect to statements made under oath, and the statute is designed to insure that all such statements merit the trustworthiness which the law assigns to them. The statute thus applies to affidavits as well as testimony. (*Sanders* v. *People,* 124 Ill. 218.) The principle behind it makes it equally applicable to verified pleadings. Since the amended complaint in this case was not itself verified, the answer need not have been sworn to. (Ill. Rev. Stat. 1951, chap. 110, par. 159.) Neither the language nor the purpose of the statute, however, limits it to statements which are required to be verified. It is sufficient if they are authorized to be verified and are in fact verified. (See: *Lappley* v. *State of Wisconsin,* 170 Wis. 356, 174 N.W. 913; *People* v. *Godines,* 17 Cal. App. 2d 721, 62 Pac. 2d 787.) Under section 35 of the Civil Practice Act (Ill. Rev. Stat. 1951, chap. 110, par. 159,) any pleading subsequent to a verified pleading must itself be verified. In dealing with a similar statutory provision the court in the California case cited above made an observation which is equally apt here. It would be an anomalous situation, the court stated, "if, by verifying his complaint, a plaintiff could *require* a defendant to answer under oath, specifically and truthfully, under penalty of perjury" while himself remaining "free from the fear of possible perjury charges." (17 Cal. App. 2d 721, 725; 62 Pac. 2d 787, 789.) We hold that perjury may be assigned on a verified pleading, whether required to be verified or not.

We come then to the question whether the defendant was justified in refusing to answer the questions propounded by reason of possible incrimination for perjury if his answers should show that his sworn pleading was false. We think he was not, for the reason that he voluntarily elected to make his answer under oath. The situation re-

sembles that in which a witness, having already chosen to answer questions without invoking his privilege against self incrimination, is not permitted to assert that privilege as a basis for refusing to answer further questions on the same matter. (See *People* v. *Nachowicz,* 340 Ill. 480.) Although this rule is customarily described as one of waiver, it is based on the principle that the witness should not be permitted to waive his privilege for the purpose of revealing only so much of the truth as will benefit one of the parties and then assert it when interrogated as to facts which might benefit the other party. *People* v. *Nachowicz,* 340 Ill. 480, 493.

We need not explore the limitations of this rule of waiver, (see *Samuel* v. *People,* 164 Ill. 379; *Arndstein* v. *McCarthy,* 254 U.S. 71; *McCarthy* v. *Arndstein,* 262 U.S. 355; *United States* v. *St. Pierre,* 132 Fed. 2d 837, 147 A.L.R. 255,) for the present case does not involve waiver. So far as a charge of perjury is concerned, no offense was committed until the sworn pleading was filed, and so far as any other offense is concerned, the pleading did not admit its commission but denied it.

The right of the court to protect itself and litigants from imposition, however, is not confined to the boundaries of the doctrine of waiver. Nor is the power to punish for contempt restricted because another sanction exists in that the refusal to answer amounts to an admission of the facts involved. We hold that when a party undertakes to secure the benefits attached by our statute to a verified complaint or answer, he may not thereafter assert that because the pleading is in fact false he cannot be compelled to answer questions which would tend to establish its falsity.

It follows that the order of the superior court finding the defendant in contempt of court was correct and should be affirmed.

*Order affirmed.*